[Crim. No. 1850.   Third Dist.   Dec. 17, 1943.]

THE PEOPLE, Respondent, v. VON COLEY, Appellant.

Gumpert & Mazzera for Appellant.

Robert W. Kenny, Attorney General, Thomas G. Negrich, Deputy Attorney General, for Respondent.

SCHOTTKY, J. pro tem.—Defendant and appellant was convicted in the Superior Court of Stanislaus County on two counts, one of robbery and the other of grand theft. No motion for a new trial was made by appellant and this appeal is from the judgment pronounced in accordance with the verdict of the jury.

Appellant makes only two points upon this appeal. The first is that the verdict and judgment are not sustained by the evidence; and the second is that the trial court erred in admitting a certain picture.

In support of his first point, appellant contends that the identification of defendant by Dan Spencer, the victim of the asserted crime, without which there was insufficient evidence to convict appellant with the crime, was so inherently improbable that it could not rationally be believed.

We shall, therefore, very briefly summarize the testimony of Spencer as it fairly appears in the record. Dan Spencer, who, under another name, had served a term in San Quentin, from which institution he had been released in 1929, operated a twenty-acre dairy farm south and west of the city of Turlock in Stanislaus County. On the morning of January 5, 1941, at about 5 a. m., while he was still in bed in the room in which he slept on said farm, although he was awake and his lamp was lighted, two men clad in yellow raincoats, not wearing hats and with white handkerchiefs as masks over their faces, pushed the door open and pounced on Spencer and commenced to choke and brutally beat him. They brought with them a lantern which came from the cow barn where Spencer's milker had also been attacked and left tied up, which lantern they placed upon the floor of Spencer's room. Spencer resisted vigorously and the unequal struggle lasted a half hour, according to Spencer, when the two men succeeded in subduing Spencer and on tying his hands and feet with strips made from Spencer's blanket, took $150 belonging to Spencer, part of which was in a billfold in his short jacket and part of which was in a pocketbook at the head of the bed. The men then left and Spencer managed to get to his front porch and saw the men run into

the garage and get his automobile and drive out of the barnyard into the road and in the direction of the Crow's Landing road. Just as they were going out of the gate he saw a hat blow out of the automobile and lie in the road, which hat, he later testified, was one he had previous to this date seen defendant wearing. Spencer testified that the man who held him while the other beat him was appellant, whom he had known well for more than ten years and who worked for him on several occasions, the last being for a period of twelve days in the month preceding, when appellant painted Spencer's house and lived on the premises with Spencer and thus became familiar with the times Spencer received his cream checks and with the fact that Spencer kept no bank account but cashed the checks and used the cash to buy additional cows and feed. He testified, "Well, I knew him just as soon as he come into the room, I could tell him right away, just as soon as he opened the door, by his general build, his shoulders, the way he moved. I knew him right away." Spencer testified further that appellant did not speak at any time during the attack but that the other man called appellant "Frank," which was appellant's nickname. He testified further that appellant had a tattoo mark on his left hand between his thumb and index finger and that he observed the tattoo mark during the attack.

Such in brief is the testimony which appellant contends is inherently improbable and unbelievable *per se.* There was, of course, the testimony of many other witnesses both for the People and the defendant, but it may be conceded that without the identification of appellant by Spencer there is not sufficient evidence to connect appellant with the crime.

As is stated in 8 California Jurisprudence, page 590, section 582:

"A question at law is presented which authorizes an appellate court in setting aside a verdict, if the testimony relied upon by the prosecution is apparently so improbable or false as to be incredible and to amount to no evidence at all. If it is of this character, the court is justified in assuming that the verdict obtained was the result of passion or prejudice rather than of a calm and dispassionate consideration of the evidence. To authorize a reversal under this rule, the improbability must appear very plainly. It has been said that the conclusions of the jury will be overruled only where the uncorroborated testimony of the complaining witness is so

obviously and so inherently improbable as to leave no recourse, without self-stultification, except to reverse the judgment.''

As was said in *People* v. *Collier*, 111 Cal.App. 215 [295 P. 898]:

''Where the testimony is such that within the knowledge of reasonable men it cannot be true the appellate court might assume that knowledge and hold the testimony legally insufficient, but to do so the court must act on what is the equivalent to judicial notice.''

And as was said by this Court in *People* v. *Lewis*, 18 Cal. App. 359 [123 P. 232]:

''We must assume, in the absence of something in the record upon which to base a contrary opinion, that the jury reached a verdict with full realization of their sworn duty, free from passion and prejudice. We must also assume that the learned trial judge was satisfied with the verdict or he would have granted the motion for a new trial. Cases have occurred, some are cited, where the appellate court has felt itself constrained, in the interest of justice, to override the conclusions of jury and trial court, but such cases are rare, and occur only where the uncorroborated testimony of the complaining witness is so obviously and so inherently improbable as to leave the court no recourse, without self-stultification, except to reverse the judgment. But this obvious and inherent improbability must, however, very plainly appear before the reviewing court should assume the functions of the trial jury. . . . We must find in the record full justification for believing that the verdict was the expression of passion and prejudice rather than deliberate judgment, before we should interfere. We cannot say that such a condition is here shown.''

This well-established rule is also set forth in other cases too numerous to require citation.

Taking into consideration the rule as stated and taking the testimony of Dan Spencer as hereinbefore set forth, we are unable to find any merit whatever in appellant's contention that Spencer's testimony is inherently improbable. It is not necessary for a witness to observe the features of a person charged with crime in order to identify him. There may well be other physical characteristics that are sufficient for identification such as detailed by Spencer who said he could identify appellant by his general build,

his shoulders, the way he moved and by the tattoo mark between the thumb and index finger of his left hand. Appellant was before the jury and testified in the case and the jury had the opportunity of weighing Spencer's testimony along with their observation of appellant. The jury is the sole judge of the facts and of the weight to be given to testimony, and even though an appellate court may feel that the identification evidence is not too strong, yet it cannot interfere with or invade the province of the jury where the evidence is legally sufficient.

As was said in *People* v. *Wilson*, 76 Cal.App. 688 [245 P. 781]:

"It is not necessary that any of the witnesses called to identify the accused should have seen his face. 'Identification,' says the court in *State* v. *Mason*, 152 Minn. 306 [189 N.W. 452], 'may be sufficient though the person making it cannot remember the face. Identification based upon other peculiarities may be reasonably sure.' There the Minnesota supreme court held that the identification may be sufficient though the witnesses say that they could not identify the accused from his face, the crime having been committed in the dark, but that they can identify him from his size, his general appearance, his talk, and his walk."

See, also, *People* v. *Glab*, 15 Cal.App.2d 120 [59 P.2d 195]; *People* v. *Bealey*, 81 Cal.App. 648 [254 P. 628].

It should perhaps be added, in order to more readily understand the verdict of the jury, that although the home of appellant's parents was in Stanislaus County and he frequently visited at their home and at Spencer's ranch prior to the happenings of January 5, 1941, he did not return to Stanislaus County again until he was arrested and brought back on May 1, 1943. Furthermore, it appeared from the evidence that appellant, who had served two prison terms, was a parolee at the time of the alleged crime, and had for some time previously reported each month to the State Parole Officer, did not report thereafter to said officer.

We conclude, therefore, that appellant's contention that Spencer's testimony is either insufficient or inherently improbable is not supported by the record or the law.

■ Appellant's second contention requires only brief mention. Two of the People's witnesses testified that on the morning of January 5, 1941, they had seen two men in Newman who asked the direction to Tracy and wanted to get

there. At the trial, which occurred more than two and a half years after the crime, these witnesses could not describe them but stated that a day or two after the crime they had been shown some pictures of a number of people by a deputy sheriff and that they had identified one of the pictures as being a picture of one of the men they had seen in Newman the morning of the crime. The deputy sheriff was permitted over the objection of appellant's counsel to point out the picture of appellant as the one the witnesses had identified when he showed same to them in Newman as the man they had seen in Newman the morning of the crime. This, appellant contends, was error, but he cites no authority upon the point. The evidence was clearly admissible and its weight was for the jury to determine.

From a reading of the record it appears that appellant was defended at the trial by one of the ablest and most·experienced members of the Stanislaus County bar, that the record is singularly free from error, that appellant was convicted by the jury upon sufficient evidence, and that the judgment should be and the same is hereby affirmed.

Thompson, J., and Adams, P. J., concurred.