[Crim. No. 5556. Second Dist., Div. One. Aug. 27, 1956.]

THE PEOPLE, Appellant, v. PATRICIA ANN WICKLIFF, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello and Lewis Watnick, Deputy District Attorneys, for Appellant.

No appearance for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with a violation of section 11500 of the Health and Safety Code of California, a felony, in that she had in her possession a preparation of heroin. It was further alleged that defendant had previously been convicted of the crime of violation of section 11721, Health and Safety Code of this state, a misdemeanor.

At the time of her arraignment defendant made a motion under section 995 of the Penal Code to set aside the information. The motion was granted and defendant discharged.

From the order setting aside the information the People prosecute this appeal.

The factual background surrounding this prosecution may be thus epitomized. On the night of August 4, 1955, Alfred W. Trembly, a police officer of the city of Los Angeles, assigned to the Narcotic Division, and one of the arresting officers, followed defendant and "her common-law husband" from Fifth and Stanford Streets. He observed them get into an automobile and followed them. The officer noticed a second automobile following the one in which he was riding "down the side street." The officers "tailed" defendant's vehicle to 928 West 28th Street, where they observed the aforesaid two autos stop, one behind the other. Defendant and one Dudley Osby (defendant's common-law husband), who was also arrested, alighted from one of the vehicles and entered the house. The officers observed one of the occupants get out of the other vehicle and go into the house. After approximately 20 minutes "they" returned and as "they" attempted to enter the automobile, the officers placed "them" under arrest.

Testifying as to his reasons for trailing the vehicle in which defendant was riding, Officer Trembly stated that she had been known to him for over a period of a year; he had arrested her twice previously for narcotics; he had known her common-law husband by the name of Dudley Osby for a year and "at that time" the officer had received information from 50 or 60 sources that "he was selling narcotics." The officer had had a conversation with defendant's common-law husband the night before the arrest and he had told him (the officer) that he was "beating up a half ounce of heroin to one Eddie Turner"; the officer had been "working on the defendant," watching her for a period of at least six or eight months.

The officers took defendant to a police station where they "had her" searched by Policewoman McGregor who took defendant to the women's room and returned three or four minutes later and handed the witness "the evidence," which consisted of a latex bag, which had another latex bag inside of it containing a brownish powder. Policewoman McGregor also handed the officer a cellophane package containing eight bindles, each containing a brown powder.

A "bicadol" box was found in the street on the ground at the time of the arrest; the spoon was found in defendant's common-law husband's (Dudley Osby) pocket.

Defendant, "her husband," Dudley Osby, and "the other

person by the name of Doss" all passed over the area where the "bicadol" package was found.

The officer had a conversation with the defendant which was free and voluntary on her part, in which she said that she had gone to 928 West 41st Street for the purpose of buying five spoons of heroin from Doss, "from San Diego," having made the arrangements on East Fifth Street where Doss had stated that he had five spoons of heroin; they went to "the room" where he had four spoons in "the cumdon" and another "already papered up in the 'bicadol' can"; they examined the can and found the heroin inside the paper which apparently had been wet and of a very poor grade so "they" did not buy it. "They only bought the four spoons which was loose in the cumdon." The "cumdon" is the latex bag.

She stated that while Doss was putting the "bicadol" package in his pocket, defendant stole "the eight papers" from him and put them in her brassiere.

She stated that the money was given to her by "Dudley, her husband," who did not know anything about the heroin which was defendant's; that she "knew she was guilty and knew she had to take the rap for it."

She further stated that she had "the latex bags" in her brassiere at the time of her arrest.

The defendant stated that she paid $70 "for the four spoons."

Asked what he did with "the latex bags, the spoon and the 'bicadol' box," the witness stated that after Policewoman McGregor gave "them" to him, he put her initials on them and took "them" to Central Station and booked them as evidence.

On cross-examination the witness testified that:

He searched the man, Dudley; he had no "warrant to search him"; that he made a cursory search ("just of her (defendant's) pocketbook") and had no "warrant to search her."

During the searches he observed no narcotics on the person of either of them.

The witness did not ask defendant for her consent to be searched but, "did it against her consent."

They took her to the police station, where she neither objected nor consented to being searched.

The defendant did not at any time object to having a search made of her person.

Gerda McGregor, the policewoman, testified that she searched

defendant but that nothing was said by her to defendant prior to the search. That she asked defendant to come with her to the ladies' restroom; asked her if she had "any stuff on her"; defendant said "Yes" and "mentioned" that it was in her brassiere. The officer then "reached in her brassiere and pulled out these items."

The defendant at no time gave her consent "in words" to the witness searching her.

The officer did not have a warrant or "a warrant from any judicial law enforcing authority to make that search."

Jay A. Allen, a police officer of the city of Los Angeles assigned to the Scientific Investigation Division and who was stipulated to be a qualified forensic chemist, testified that in his opinion the powder contained in the latex bag and the 34 paper bindles consisted of a narcotic known as heroin.

The sole question tendered on this appeal is whether there was reasonable and probable cause for the arrest of defendant and was the resultant search reasonable under the facts and circumstances narrated in the foregoing factual statement.

No brief has been filed by respondent and it is the contention of appellant (People) that the principal evidence against defendant at the preliminary examination was not obtained in violation of her constitutional guarantee against unreasonable searches and seizures; was admissible in evidence; and based thereon, that respondent was legally and with reasonable and probable cause committed for trial in the superior court and therefore that the trial court erroneously granted respondent's motion to dismiss the information made under section 995 of the Penal Code.

The Fourth Amendment to the Constitution of the United States, and article I, section 19 of our California Constitution, guarantee the right of the People to protection against unreasonable seizures and searches of their persons, houses, papers and effects.

From time immemorial the most conspicuous feature of history has been the struggle between liberty and individual rights on the one hand and authority on the other. ■ It is sometimes difficult for the individual to remember that liberty is not license and consists not in a right in every man to do what he pleases, but that it consists in an equal right in all the people to have, to enjoy and to do in peace, security and without molestation, whatever the equal and constitutional laws of the country admit to be consistent with the

public good. In consonance with the foregoing, the law provides that peace officers may make arrests on criminal charges either under authority of a warrant, or without warrant, where the statutory grounds exist.

Penal Code, section 836, subdivision 5, provides in part that a peace officer may make an arrest of a person without a warrant "at night, when there is reasonable cause to believe that he has committed a felony."

Reasonable cause has been defined by our California Supreme Court as such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest, strong suspicion, that the person in question is guilty of a crime (*People* v. *Kilvington*, 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]). Probable cause has been defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true (*People* v. *Brite*, 9 Cal.2d 666, 687 [72 P.2d 122]; *Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 184 [281 P.2d 250]; *United States* v. *Bell*, 48 F.Supp. 986; *Cook* v. *Singer Sewing Machine Co.*, 138 Cal.App. 418, 422 [32 P.2d 430]; *Coverstone* v. *Davies*, 38 Cal.2d 315 [239 P.2d 876]).

With the foregoing rules in mind we proceed to a consideration of the facts relied upon by the officers as justifying reasonable cause on their part to believe that defendant had committed and was committing a felony. These facts are that Officer Trembly had twice before arrested defendant for narcotics violations. He knew that her companion was her common-law husband (i.e., that he lived with her). The officer had known the common-law husband, Dudley Osby, for a year during which time he had received information from 50 or 60 sources that Osby was selling narcotics.

He had a conversation on the night before the arrest with Dudley Osby, the common-law husband, who had said he was "beating up a half ounce of heroin" for one Eddie Turner.

He had just seen defendant and her common-law husband drive from one location to another, using only side streets, followed by another car; both parked and the occupant of the second car followed defendant and her companion into the house; then all three came out.

In determining whether there is reasonable cause to believe a person guilty of a felony, a peace officer may take into account the past conduct, character and reputation of the person suspected, and reasonable cause to justify an arrest

may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535], and cases therein cited). There is no formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances. Adopting this rule we are satisfied that in the instant case, the officers were justified in arresting the defendant and such arrest did not impinge upon any of her constitutional rights.

Since the officers were privileged to arrest the defendant at night without a warrant, it was proper for them, as an incident to a lawful arrest, to contemporaneously search the defendant and seize articles which they believed were being used by her in the commission of the crime for which she was arrested (*In re Dixon,* 41 Cal.2d 756, 761, 762 [264 P.2d 513]; *People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582]).

Under the circumstances present in the case now engaging our attention, the evidence before the magistrate was sufficient to justify the conclusion that a violation of section 11500 of the Health and Safety Code had been committed; that the officers had reasonable cause before the search and seizure to believe that defendant was guilty thereof and to arrest her. Therefore, the search and seizure incident to such arrest was lawful.

The order from which this appeal was taken is reversed.

Doran, J., and Fourt, J., concurred.