[Crim. No. 7214. Second Dist., Div. One. Aug. 1, 1960.]

THE PEOPLE, Respondent, v. MAURICE NEBBITT, Appellant.

454

Ellery E. Cuff, Public Defender (Los Angeles), Fred Kilbride and James L. McCormick, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted by the trial court of having marijuana in his possession in violation of section 11530, Health and Safety Code. His motion for new trial was denied and he was sentenced to the county jail for 180 days. He appeals on the ground that there was no probable cause for his arrest and that the search and seizure resulting therefrom were unlawful.

The evidence, viewed in the light most favorable to respondent, discloses that the officers who originally arrested defendant on grand theft auto (Veh. Code, § 503) had reasonable cause to believe him guilty of the charge, and that the subsequent seizure of marijuana cigarettes from the car in which he was riding and his jacket found in the vehicle, was valid. As Officers Maloof and Bernard were riding in a police car on Adams Boulevard around 4 p. m. on November 29, 1959, they observed a vehicle bearing no front license plate traveling in the opposite direction. They made a U-turn and, noticing thereon no rear license plate, stopped the car, which was being driven by James Smith accompanied in the front seat by defendant. Officer Maloof asked Smith for his driver's license, which he produced; then he asked if the vehicle was his, to which he responded that it was not. He said he did not know

to whom the car belonged but that he had gotten it an hour before from a Mr. Curtis, who was a car dealer, and from whom he had previously purchased a car, and who had "loaned him this car as a loaner while his car was being repaired." Thereupon, Maloof looked at the temporary registration sticker on the windshield of the car, which bore the name of Lillian Smith, 702 Vernon Avenue, as having purchased the vehicle on November 3 from Tom Curtis. Maloof asked Smith if he knew Lillian Smith; he said he did not. Smith produced nothing in documentary form to show either that he had purchased a car from Tom Curtis or was using the one he was driving with the owner's permission; Maloof testified: "if he (Smith) had had anything documentary, I wouldn't have bothered him." Smith's statements as to how he obtained the vehicle, appearing to be inconsistent with information disclosed on the registration sticker; his lack of knowledge of the owner of the car which vehicle displayed no license plates; the unlikelihood of Curtis, the dealer, being able to give Smith the car as a "loaner" when it had only recently been purchased from him by a third person whom Smith did not know; and defendant, self-conceded friend of Smith, and his passenger, having no information concerning the car's owner and Lillian Smith, its recent purchaser, all inclined the officers to a "very strong suspicion" that they had taken and/or were driving the vehicle without consent of the owner (Veh. Code, § 503), whereupon they arrested the two men. Thereafter, as a normal procedure before impounding the vehicle, the officers began an inventory of all personal property found therein. Maloof picked up a jacket on the front seat where defendant had been sitting and noticed in plain sight a brownish cigarette; he did not know whether it had fallen out of the jacket or had been lying under it. However, inasmuch as it appeared to him to be marijuana, the officer then searched the jacket and found another such cigarette in the left hand pocket. With the two cigarettes (later determined to be marijuana) in one hand and the jacket in the other, Maloof asked "(W)hose are these?" Defendant answered, "That's my jacket. I don't know anything about anything else." The officer then searched the vehicle but found nothing more. Smith and defendant were taken to the police station where Mr. Curtis was called; he said that Smith had permission to use the vehicle. Later in the day in the presence of Maloof at the station, Smith said to defendant: "Man, you better tell the truth about those cigarettes. I don't want to go to jail for something you have

done.'' Defendant then told the officers he had purchased them about a week before somewhere on Central Avenue but that he had been drunk and no longer remembered how many he had bought.

Defendant testified at the trial that prior to his arrest he showed Officer Bernard his driver's license, social security card and identification card; that Smith showed Maloof a contract of sale from Curtis for Smith's own car which was being repaired; that he had no knowledge of the marijuana cigarettes prior to their discovery by officers and that the day preceding, defendant's jacket, for some time, had been hanging in the tackroom at the end of the barn at the race track where he was employed, to which others had access.

At the trial defendant's objection to the introduction in evidence of the two marijuana cigarettes, on the ground they were secured as the result of an illegal search and seizure, was overruled. The issue before us is whether there was probable cause for the arrest of defendant, and the validity of the subsequent search and seizure of the narcotic.

It is conceded that no warrant was involved; thus for the arrest to be valid the officers must have had reasonable cause to believe that Smith and defendant had taken and/or driven the vehicle without consent of the owner, a felony (Pen. Code, § 836, subd. 3; Veh. Code, § 503). ■■ As to what constitutes ''reasonable cause,'' there is no formula for its determination, each case being dependent on its own facts and circumstances (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344 [51 S.Ct. 153, 75 L.Ed. 374]; *People* v. *Wickliff,* 144 Cal. App.2d 207 [300 P.2d 749]). ■■ ''Reasonable cause'' is defined by our Supreme Court ''to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime (citation). ■■ Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt (citations)'' (*People* v. *Ingle,* 53 Cal.2d 407 [348 P.2d 577]; *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]; *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73]). ■■ As to how reasonable cause shall be determined in a given case, the court shall consider the facts and circumstances presented or apparent to the officer at the time he was required to act (*People* v. *Evans,* 175 Cal.App.2d 274 [345 P.2d 947]; *People* v. *Hollins,* 173 Cal.App.2d 88 [343 P.2d 174]; *People* v. *Silvestri,* 150 Cal.

App.2d 114 [309 P.2d 871]). ▓▓ In this connection it should be borne in mind that the credibility of witnesses and the weight of the evidence are matters exclusively within the province of the trial court and, as it had a right to do, it accepted the testimony of the police officers relative to what occurred prior to defendant's arrest, and rejected the latter's version of the same.

▓▓▓ We deem the information and circumstances presented to the police officers at the time they arrested the two men for grand theft auto to constitute reasonable cause for them to believe they had committed the offense; the evidence in the record before us and considered by the lower court is sufficient to sustain its finding of reasonable cause. The vehicle in which defendant, a friend of Smith, was riding and which was being operated by the latter on a public highway displayed neither front nor rear license plates, whereupon the officers stopped the car. They told the officers neither was the owner, they did not know to whom the automobile belonged, and that Smith had borrowed it an hour before from Curtis, a used car dealer; however, the registration sticker on the windshield showed the car to have been purchased some three weeks before, on November 3, from Curtis by a third person, not known to either Smith or defendant. Although they produced identification cards to the officers, they did not produce any kind of documentary evidence to show that the car had been loaned to them either by the registered owner or Curtis, or that Smith had previously purchased a car from the latter. It was this information the officers had in their possession at the time they arrested the two men.

▓▓▓ Relative to the propriety of the officers in stopping the car in the first instance, it is clear under sections 5200, 5201, 5202, Vehicle Code, requiring display of license plates, that the vehicle was being operated on a public highway in violation of the law; and that they were not only justified in stopping it but it was their duty as law enforcement officers to do so (*People* v. *West,* 144 Cal.App.2d 214 [300 P.2d 729]).

▓▓▓ The unlawful operation of a vehicle which supports the validity of such official conduct does not refer alone to the manner in which the car is being driven, but extends as well to the absence of certain equipment thereon, such as license plate illumination (*People* v. *Sanson,* 156 Cal.App.2d 250 [319 P.2d 422]) and license plates (*People* v. *Galceran,* 178 Cal.App.2d 312 [2 Cal.Rptr. 901]), and the use of defective equipment or that which fails to comply with the provisions of

the Vehicle Code, such as faulty stop signals (*People* v. *Zubia,* 166 Cal.App.2d 620 [333 P.2d 349]), defective taillights .(*People* v. *Sanson,* 156 Cal.App.2d 250 [319 P.2d 422]), and the like. By reason of the failure of the vehicle, which Smith and defendant were using, to display license plates the officers not only were justified in stopping the driver for a violation of the law but were confronted with a reasonable suspicion that the car had been stolen.

Having lawfully stopped the car it was also reasonable, inasmuch as the vehicle bore no license plates, in itself a suspicious circumstance, for the officers to inquire concerning its ownership (*People* v. *Galceran,* 178 Cal.App.2d 312 [2 Cal. Rptr. 901]). This, together with the registration certificate which showed the ownership of the vehicle to be in the name of a third person unknown to Smith and defendant and which seemed to be inconsistent with Smith's statement that an hour before he had obtained the automobile from a dealer, and other factors including their lack of knowledge of the ownership of the car and their failure to produce documentary evidence to show their lawful possession of the same, or to corroborate Smith's statement that he had previously purchased a vehicle from the car dealer, appear to constitute sufficient information to lead a man of ordinary prudence to believe and conscientiously entertain an honest and strong suspicion that the two men had taken and/or were driving the vehicle without permission of the owner.

Appellant relies on *People* v. *Macias,* 180 Cal.App.2d 193 [4 Cal.Rptr. 256] and *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13]. We have examined these cases but find them to be without application to the case at bar. Factually, they differ greatly from the instant situation. In the former, the officer, relying upon a description of the robber which fitted defendant who was found in a bar two and a half blocks from the scene of the crime, arrested him on a robbery charge. The court found there was no probable cause because the description furnished nothing distinctive and prior to his arrest police failed to investigate defendant, but mainly because when arrested defendant was not engaged in any suspicious activity. Such a situation differs substantially from one in which the automobile driven by Smith and in which defendant was riding, was being operated without license plates, not only a suspicious circumstance relating to the lawfulness of their possession of the same, but constituting a violation of the law. That neither defendant nor the driver owned the car in ques-

tion (*People* v. *Galceran,* 178 Cal.App.2d 312 [2 Cal.Rptr. 901]), that neither knew to whom it belonged, that the registered owner was unknown to both of them, and that their explanation of their possession of the vehicle seemed inconsistent with that contained in the registration certificate, all created their use of the car a suspicious activity far different than the normal circumstances of a man sitting at a bar. In *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13], defendant was arrested for a hit and run offense because the front of his car was damaged. His vehicle was in no way then violating the law but, more important, the explanation offered by defendant concerning the damage to his car was a reasonable one, wholly consistent with innocence. The court held there was no probable cause for defendant's arrest. The facts are unlike those at bar—inasmuch as the instant vehicle failed to display license plates and the explanation of their possession of the vehicle was inconsistent with its registration, it can hardly be argued that it was wholly consistent with innocence.

Having concluded that the officers had reasonable cause to arrest Smith and defendant for grand theft auto, we proceed to the discovery of the narcotic received in evidence. ██ "A police officer is authorized to remove a vehicle from the highway to the nearest garage when he arrests any person driving, or in control of a vehicle for an alleged offense, or where such officer is, by the Vehicle Code or other law, required to take the person arrested immediately before a magistrate" (*People* v. *Simpson,* 170 Cal.App.2d 524, 530 [339 P.2d 156]). Thus, the officers had a lawful right to impound the car, and they, after Smith and defendant were removed therefrom, took possession of the same for that purpose. At that time, as is the standard practice, the officers proceeded to make an inventory of personal items in the vehicle (*People* v. *Ortiz,* 147 Cal.App.2d 248 [305 P.2d 145], wherein defendant was arrested for "drunk auto"). ██ "In the circumstances of this case it was not unreasonable for the police officer to make an inventory of the contents of the automobile prior to impounding it. Such inventory was a protection to the owner of the vehicle, the garage owner, and the officer. Since the marijuana (found by officers in the glove compartment) was found during the course of making the inventory, it was not discovered as a result of an unreasonable search and therefore it was not inadmissible in evidence." (P. 250.)

Yet another factor bears heavily on the validity of the seizure of the first marijuana cigarette and the officer's sub-

sequent search of defendant's jacket in which the second was found. In the course of making the inventory of the contents of the car, the officer merely removed the jacket from the front seat revealing in plain sight the narcotic. How it got there could not be determined but it is clear that when the officer picked up the jacket the cigarette was there for all to see.　　　　Actually, the officer's observation of the cigarette was not the result of a search, for it appeared in plain sight in the normal course of the reasonable and valid activity of the officer in making the inventory, incidental to impounding the car. "(To) observe that which is open and patent is not a search" (*People* v. *Spicer,* 163 Cal.App.2d 678, 683 [329 P.2d 917], citing *People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896]); thus, no search revealed the first cigarette found by the officer.

　　　　Believing the cigarette to contain marijuana, it was then proper for the officer to make a search of the vehicle and of defendant's jacket—the former revealed nothing, the latter, another marijuana cigarette. In *People* v. *Murphy,* 173 Cal. App.2d 367 [243 P.2d 273], an automobile without lights was parked at the curb at night. In the course of checking the registration from the outside of the car, the officer saw an automatic pistol lying on the floor. Similar contentions were advanced but rejected by the court at page 377 : "In the course of checking the registration of the automobile the officer, from the outside of the car, saw the automatic pistol on the floor. This warranted investigation and the officer promptly took possession of the gun. There was no search as far as the gun was concerned, for to see that which is in plain sight is not a search (citations). Upon finding a loaded pistol in the car, it was reasonable for the officers to conduct a further investigation." Inasmuch as the officer did not actually search the vehicle and defendant's jacket until he came upon the first marijuana cigarette which appeared in plain sight upon removal of the jacket in the course of inventorying the contents of the vehicle prior to impounding the same, we hold the search justified (*People* v. *Sanson,* 156 Cal.App.2d 250 [319 P.2d 422]; *People* v. *Anders,* 167 Cal.App.2d 65 [333 P.2d 854]; *People* v. *Galceran,* 178 Cal.App.2d 312 [2 Cal.Rptr. 901]).

　　　　Viewed from another approach, we deem that no seizure existed, for both the first cigarette and the second found in defendant's jacket were legally in the possession of the

officers, predicated on that line of authority holding that if a vehicle was legally in the possession of the police as incident to its having been impounded, the contents of the car were also legally in their possession. ''Where an automobile is lawfully in the custody of a police officer, such contraband articles as are contained in it are legally in the possession of such officer (citations)'' (*People* v. *Ortiz*, 147 Cal.App.2d 248, 251 [305 P.2d 145]). Thus, possession of the narcotic was legally obtained by the officer.

Moreover, a search without a warrant is valid where incident to lawful arrest if reasonably made and in good faith (*People* v. *Baker*, 135 Cal.App.2d 1 [286 P.2d 510] ; *People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40] ; *People* v. *Coleman*, 134 Cal.App.2d 594 [286 P.2d 582] ; *People* v. *Smith*, 153 Cal.App. 2d 190 [314 P.2d 31] ) ; this is true even though the evidence seized is for a crime different from the one for which the arrest was made. (*Harris* v. *United States*, 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399] ; *People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721] ; *People* v. *Lucas*, 180 Cal.App.2d 723 [4 Cal.Rptr. 798] ; *People* v. *Ortiz*, 147 Cal.App.2d 248 [305 P.2d 145]). ''The fact that the search disclosed evidence of a different crime from that suspected at the time the search was instituted does not prevent the use of the evidence disclosed (citations)'' (*People* v. *Galceran*, 178 Cal.App.2d 312 [2 Cal.Rptr. 901]).

For the foregoing reasons the judgment and order appealed from are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 22, 1960, and appellant's petition for a hearing by the Supreme Court was denied September 20, 1960.