[Crim. No. 4115.    First Dist., Div. Two.    Oct. 1, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
AUSTIN SIMONS, Defendant and Appellant.

Hutton & Foley and Edward J. Foley for Defendant and
Appellant.

Stanley Mosk, Attorney General, John S. McInerny and
Eric Collins, Deputy Attorneys General, for Plaintiff and Re-
spondent.

KAUFMAN, P. J.—Convicted by a jury of possession of narcotics, in violation of section 11500 of the Health and Safety Code, defendant appeals from the judgment of conviction and from the order denying his motion for a new trial. He argues that the judgment must be reversed because the narcotics were obtained by an unlawful search and seizure.

We turn first to the appeal from the order denying the motion for a new trial. The record indicates that the notice of appeal was filed on November 24, 1961, after the effective date [September 15, 1961] of the 1961 amendment to section 1237 of the Penal Code, which abolished the appeal from an order denying a motion for a new trial in criminal cases, except in special circumstances not applicable here. Therefore, the purported appeal from the order denying the motion for a new trial must be dismissed as an appeal from a nonappealable order (*People* v. *Britton,* 205 Cal.App.2d 561 [22 Cal. Rptr. 921]).

The record reveals the following facts: On Friday, August 18, 1960, at about sundown, the defendant, who was driving to Los Angeles with a male companion, had mechanical difficulties with his Volvo automobile 3 or 4 miles south of San Ardo in Monterey County. He parked the car on the side of the highway and flagged down a passing Texaco truck driven by Gerald Johnson.

Johnson, after refusing defendant's offer of $20 to tow him to Paso Robles, because it was against company rules, agreed to take the defendant to San Ardo for a mechanic. The defendant was very excited and nervous but not drunk; the defendant's rapid conversation did not make much sense, and he fidgeted so much that Johnson began to doubt whether he should have given the defendant a ride. Johnson left the defendant at a Shell service station in San Ardo, after telling the mechanic, Conner, that the defendant was acting odd and was highly excited.

Conner and the defendant drove out to the Volvo. Before leaving, Conner telephoned his employer, Kearns, at home. Kearns indicated he would drive directly out to the Volvo. The defendant told Conner he was a male nurse and was looking for work, was on his way to Los Angeles, but would do field work if any was available.

When Conner and the defendant arrived at the Volvo, the defendant's male companion was waiting for them with a woman in a station wagon. The defendant's companion said: "Hurry up, we got a ride to L. A." Conner thought it was

very strange that the woman in the station wagon was waiting to pick up the defendant and his companion, as it was dusk and the area was a sparsely populated one. All three also appeared drunk to him. In arranging for the repairs, the defendant gave Kearns an AAA card with the last name of Simons but with a different first name. Conner hitched up the Volvo while Kearns took the defendant's AAA card and then left. On his way back to San Ardo, Conner stopped to check the tow chain at the Tidewater station owned by Bill Standard. Standard told Conner that the defendant had stopped in earlier and had mentioned wanting only $1.00 worth of gas to go to Los Angeles, and that he thought the car might be stolen.

Because of this statement and the peculiar circumstances of the defendant's hurried departure, Conner stopped Highway Patrol Officer Silliman on the way back and asked the officer to come by and check the Volvo. Silliman arrived shortly after 8 :30 p. m. After hearing Conner's story, including the fact of an AAA card with the name of James Simons, Silliman radioed the license number to Salinas to find out whether the car was stolen. He was told it was not but proceeded to search the vehicle for the registration. He did not check with Sacramento. As the door on the driver's side was blocked, he entered from the passenger side, and looked for the registration slip on the steering post, on the visor and in the glove compartment, the three most common places for the display of the registration certificate. He did not look at the fourth most common place, the dashboard.

In the glove compartment, he found several slips of paper bearing names. He also noticed an assortment of items in the back seat: paraphernalia from an encyclopedia company [which appeared to indicate that the car belonged to an encyclopedia salesman] ; bows and arrows, bottles of peculiar flavored nonalcoholic syrup and two boxes of groceries. Because of the slips of paper in the glove compartment and the things in the back seat, Silliman continued his search, believing the latter items might be the result of a burglary. Silliman did not, however, have a particular burglary in mind. In a zipper shaving case, lodged between the door and the back seat, Silliman found some shaving equipment and several bottles of pills. The contents of some of the bottles of pills were subsequently identified as narcotics.

Two days later, on Sunday, August 20, about 6 p. m., the defendant returned to the Shell station to pick up his car.

Conner called Officer Silliman who immediately came to question the defendant. The defendant showed the officer the registration certificate which was folded to a 3-inch by 4-inch rectangle and taped to the dashboard on the driver's side, clearly showing his name. Although the registration slip was white, and the dashboard off-white, Silliman could see the registration very clearly from the outside of the vehicle. Upon being questioned by the officer about the pills, the defendant admitted that he had taken them from a drawer in Mt. Zion Hospital in San Francisco, where he had been employed, and indicated that he took the pills to calm his nerves. Subsequently, the defendant was arrested for possession of narcotics.

A motion under Penal Code section 995 was made and denied at the preliminary hearing. A motion to suppress the evidence upon the grounds of illegal search and seizure was made and heard prior to the trial and renewed at the beginning of the trial. The motion was denied and during the trial, the defendant was permitted to have a continuing objection to the offer of evidence based on the search and seizure. Subsequently, the objection was overruled. On this appeal, defendant argues that: 1) the search which produced the evidence was an unreasonable general exploratory search, as Officer Silliman had no reasonable cause to believe that the Volvo was stolen or that a burglary had been committed; 2) there was no "emergency" requiring the search of the automobile without a warrant; 3) Silliman could not search the Volvo on the basis of the information supplied by Conner as Conner was not a reliable informer.

The search was made without a warrant and not justified as incidental to the arrest of the defendant. Under such circumstances, the burden rests on the prosecution to show proper justification. Consequently, the determinative question on this appeal is whether, in the absence of a warrant or arrest, the search was a reasonable one (*People* v. *Brown,* 45 Cal.2d 640, 643-645 [290 P.2d 528], citing *Carroll* v. *United States,* 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790] ; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57] ).

Section 2805 of the Vehicle Code provides: "A member fo the California Highway Patrol may inspect any vehicle of a type required to be registered under this code on a highway or in any public garage, repair shop, parking lot, used car lot, or other similar establishment, for the purpose of locating stolen vehicles or investigating the title and regis-

tration thereof.'' The question then is whether under the authority of the above section, plus the information given the officer by Conner that the defendant acted odd, together with the admitted fact that the officer did not see the registration slip, made the search reasonable under the circumstances. A reading of the record discloses a series of strange and unusual circumstances. These circumstances plus the fact that the officer admittedly did not see a registration slip justified the officer as a reasonable man to search the automobile to see if there were any stolen articles or contraband (see *People* v. *Ingle*, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], and *People* v. *Nebbitt*, 183 Cal.App.2d 452 [7 Cal.Rptr. 8]).

The trial court, therefore, was justified in denying the motion to suppress the evidence upon the grounds of an illegal search and seizure and accordingly, there is no prejudicial error in the record before us.

Judgment affirmed. Appeal from order denying motion for new trial is dismissed.

Shoemaker, J., and Agee, J., concurred.