[Crim. No. 4201. First Dist., Div. Two. Feb. 14, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK MARTIN MOLARIUS, JR., Defendant and Appellant.

12

Clarence B. Canson for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Keith E. Pugh, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Defendant, Frank Martin Molarius, Jr., appeals from a judgment rendered on a jury verdict finding him guilty of burglary in the second degree (Pen. Code, § 459), and from the order denying his motion for a new trial. The contentions on appeal are that certain evidence used at the trial was obtained by an unlawful search and seizure, and that the identification evidence adduced at the trial does not sufficiently support the verdict.

We turn first to the appeal from the order denying the motion for a new trial. This appeal must be dismissed since it is an appeal from a nonappealable order under section 1237 of the Penal Code, as amended by Stats. 1961, chapter 850. *(People* v. *Simons,* 208 Cal.App.2d 83 [25 Cal.Rptr. 57].)

·The record reveals the following facts: On December 19, 1961, the general store in Bradley, California, was burglarized. On that date, about 2 a.m., Mrs. Allene Harrington, who lived next door to the store, was awakened by loud popping noises. She got up, went to the window, looked into the alleyway between her home and the store, and saw a man walk down the alley between her home and the store. She remained at the window for a few moments and observed a second man, who was in the shadows at the rear of the store, enter the store with the first one. Mrs. Harrington immediately called Mrs. Sims, the wife of the owner of the store. Mrs. Harrington's son, Samuel, overheard the call, got up and went to the window with his mother, and saw a man running towards the front of the building.

Mr. Sims immediately put on his clothes, got a shotgun and drove around the side of the store. After noticing that the

sliding door had been opened and that a car was parked about 300 feet from the rear of the store, he went to get Mr. Hedges from the Shell station nearby. When they returned a little after 2 a.m., Hedges went to the front and Sims around to the back. Sims discovered that the padlock on the back gate and the cyclone fence had been broken and that the post-master's dogs in the backyard were eating large scrap bones, whereas they normally were fed only dog food mix. He then heard someone shout and saw two men run out of the back of the store and up the alley. He followed them down the alley and found a screwdriver. Mr. Sims then examined the car and trailer parked at the rear of the store. A small dog was in the car and some boxes and a pushcart in the trailer. Sims then entered the store from the front with Mr. Hedges. Sims saw a strange crowbar. Nothing was missing from the store.

Sims called the sheriff's office about 2:15 a.m. The deputy sheriffs arrived about 2:45 a.m. and investigated the car and trailer parked near the rear of the store. The car was a 1952 Plymouth, bearing California license number AME 186; the trailer, a Nationwide rental trailer, bearing Colorado license number JX 2586. They noticed there were bones around the vehicles like the bone scraps which the dogs in back of the store were eating. The deputies noticed that the vehicles were parked in an isolated area with the keys in the ignition. A small dog was tied with a rope in the front seat. No occupants were about, and there was no visible registration card.

Upon checking with Sacramento, the officers learned that the car was registered to one Betty Fowler, whom they were not able to contact for several hours. The officers returned to the automobile the following morning and noted that the keys were still in the ignition and the dog in the front seat. They also observed a man's toilet article kit, a small zipper bag, on the front seat. They then proceeded to search the automobile. The toilet article kit contained six bottles of medicine prescribed for Frank Molarious. The officers found a pair of bolt cutters between the back and front seats. These cutters had been used to cut the padlock on the cyclone fence. In the trailer, they found a two-wheeled lift truck, a carpenter's apron containing several chisels and punches, and a sledge hammer. The rental contract from a trailer rental company in Sacramento indicated that the trailer had been rented by Frank M. Molarious and indicated the number of

14

the driver's license of the person renting. A certified copy of the driver's license issued to Francis Martin Molarius was also placed in evidence.

The first contention on appeal is that the search of the car and trailer was an unreasonable search. Appellant argues that a search and seizure of articles is justified only when there is a lawful arrest. However, it is well established that a valid search may be made in the absence of either an unlawful arrest or a valid search warrant (*People* v. *Garrison*, 189 Cal.App.2d 549 [11 Cal.Rptr. 398]; *People* v. *Brajevich*, 174 Cal.App.2d 438 [344 P.2d 815]; *Carroll* v. *United States*, 267 U. S. 132 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]). As we indicated in *People* v. *Simons*, 208 Cal. App.2d 83, 86 [25 Cal.Rptr. 57], under circumstances such as these, the burden rests on the prosecution to show proper justification. The determinative question is whether, in the absence of a warrant or arrest, the search was a reasonable one (*People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528]). Then, the primary question is whether the officers have reasonable cause to believe that an automobile contains stolen property or contraband. Each case must stand to some extent on its own feet under the general direction of "reasonable grounds for belief" (*People* v. *Brajevich, supra*, p. 443). In considering the question of reasonableness, the court looks to the facts and circumstances presented to the officers when they were called upon to act.

 We think that when the above rules are applied to the instant case, there can be no question that the search was a reasonable one under the circumstances. The officers were presented with the fact of a burglary about 2 a.m. Two witnesses saw two men running towards the car and the trailer which were parked in an isolated area at the rear of the burglarized store. The bones scattered by the door of the car were the same as those used to placate the dogs at the rear of the burglarized store. The keys were in the ignition and visible from the outside of the car. An unattended dog was tied in the front seat. No registration slip was visible and the registered owner was unavailable. The officers did not proceed to search the car until the vehicle had been sitting there unattended for six to seven hours with the key still in the ignition and the dog still in the front seat. We think that under these circumstances, the officers could reasonably believe that the burglars had arrived in the auto and abandoned it in their haste to escape.

■ Appellant next contends that the search was unreasonable because nothing had been taken from the store. However, the gravamen of burglary is entry with the requisite intent (Pen. Code, § 459; *People* v. *Beem,* 192 Cal.App.2d 207 [13 Cal.Rptr. 238]).

Appellant next contends that the evidence is insufficient to identify him as one of the perpetrators of the burglary. ■ As repeatedly pointed out, it is not our function to weigh the evidence but simply to decide whether, on the face of the evidence, it can be held that sufficient facts could have been found by the jury to warrant the inference of guilt. It is the function of the jury in the first instance and the trial court after verdict to determine what facts are established by the evidence. Before a verdict can be set aside on appeal on the ground of insufficiency of the evidence, it must be made clear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether such facts are sufficient to support the verdict (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]).

Appellant here relies on Mrs. Harrington's testimony that one of the men she saw was similar to the appellant in size and contour of the head; she was not able to see his face. Mr. Sims testified that the taller of the two men was the same size as the appellant. ■ It is not necessary, however, that a witness called to identify an accused have seen his face. Identification can be based on size, general appearance, etc. (*People* v. *Coley,* 61 Cal.App.2d 810 [143 P.2d 755].) ■ Furthermore, the jury could also consider appellant's failure to contradict, explain, or deny any of the circumstances established by the prosecution (*People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3]).

■ As to the six bottles of medicine and the trailer rental contract, appellant contends that the difference of spelling, as well as the fact that he was never identified as the person for whom the medicine had been prescribed or the person who had rented the trailer, prevent any sufficient identification of him as one of the participants in the crime. However, the appellant made no attempt to contradict, explain, or deny any of the above. His failure to refute the presumptions that the two names which were found and spelled almost exactly alike, refer to the same person is sufficient alone to

connect him to the crime. The disputable presumption established by subdivision 25 of section 1963 of the Code of Civil Procedure says there is identity of person from identity of name. Appellant offered no proof whatsoever that he was not the person in question and the jury could presume he had rented the trailer and purchased the medicine (*People* v. *Crawford*, 128 Cal.App.2d 699 [275 P.2d 931]). Furthermore, the medicine in the automobile and the trailer was found under circumstances from which the jury could reasonably infer that they were both related to the burglary. Thus, drawing in favor of the verdict every reasonable inference and following the above quoted rules, we can only conclude that the jury could have reasonably deduced from the evidence that the appellant was one of the participants in the burglary.

In view of the foregoing, the appeal from the order denying the motion for a new trial is dismissed as an appeal from a nonappealable order, and the judgment of conviction is affirmed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied February 28, 1963.