[Crim. No. 5078.   Second Dist., Div. Two.   Mar. 19, 1954.]

THE PEOPLE, Respondent, v. ROBERT CORENEVSKY, Appellant.

Lowell Lyons for Appellant.

Edmund G. Brown, Attorney General, and Alan R. Woodward, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of grand theft after trial before a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial, and a purported appeal from the order overruling his demurrer to the information.

*Facts:*[1] Jeanne Greenlin was working as a cocktail waitress at the Crow's Nest in Long Beach in January, 1953. She was the owner of a 1949 Hudson automobile. On the 13th of that month she met defendant who told her he was Rock Hudson, the movie actor. He asked her to call him Bob since he did not want anyone to know who he was. He stated he was on his way to New York and had come to Long Beach to hire a Japanese boy to drive his Cadillac for him. She overheard defendant tell the boy to take his girl friend out in the Cadillac after going over to the Villa Riviera and obtaining $250, $200 of which was to be given to the boy's mother.

Defendant said he was paying this boy $75 per week to drive him to New York, and that he was doing it because he was a good friend of the boy's parents. The fact was that defendant had met the boy, Takahashi Kumisawa, in jail. Defendant asked Mrs. Greenlin if she would join him for a few drinks. She said she had to meet her girl friend at the Roseroom, but that she would meet him later.

When Mrs. Greenlin left her work at 6 p. m., being unable to start her car, she called defendant who came over in a Cadillac. After her car was started they went to a bar where they spent approximately three-quarters of an hour before proceeding to the Roseroom where they met Bonnie Riegle and her gentleman friend. The quartet had a few drinks and subsequently went to the Villa Riviera where defendant asked at the desk if there had been any calls or messages for Rock Hudson. Thereafter they had dinner at the Con-

---

[1]The evidence is considered in the light most favorable to the prosecution, pursuant to the rules announced in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].

tinental restaurant. Each time Mrs. Greenlin's car was used it was necessary to push it in order to start it. After dinner she drove defendant to the Villa Riviera, and returned to her home.

At about 9 a. m. the next day defendant called her and said he would help her get her car started. After starting the car they drove into a garage where defendant told the attendant, ''Well, I think I will take it to my mechanic, but I have my Cadillac, could you service it. I am going to New York.'' They went then to Mrs. Greenlin's place of employment where defendant stated, ''Let me take your car and this man will fix it for you. I know him very well.'' Mrs. Greenlin suggested that it might be the battery which was causing the trouble and asked defendant if he would take it to Sears and have a new battery put in. Defendant agreed to do so and said that it would take between an hour and an hour and a half, and that she was to call him at the Villa Riviera. She told him not to keep the car later than 2 p. m. because she needed it to go back and forth to the store, whereupon she gave defendant the keys and he drove off.

Thereafter Mrs. Greenlin called the Villa Riviera several times but could not reach defendant. When she learned he was no longer registered there she reported the theft of her car to the police department. She obtained defendant's true name from the Japanese boy, who was in fact the son of a gardener next door.

Mrs. Greenlin did not at any time give defendant permission to take her car out of the city and county.

On January 14, 1953, the chief of police of Holtville, California, saw defendant in the Blue Bonnet Café in Holtville and questioned him with reference to the gray Hudson sedan registered to Mrs. Greenlin. When asked where he was going defendant did not say, but said that he was driving around. Since the chief of police was not satisfied with defendant's answers he questioned him further, whereupon defendant made a collect call to Mrs. Greenlin, asking that he be permitted to drive her car back home. During this telephone conversation defendant said to her, ''I'll explain everything. I am all mixed up. I don't know why I took it. I will explain everything. Please tell these men that I didn't steal the car.'' She talked with the authorities in Holtville and agreed with them that the car should be impounded. Defendant was booked by the Holtville authorities and later the present indictment was filed.

*Questions*: First: *Did the trial court err in overruling defendant's demurrer to the indictment on the ground that the statute under which he had been indicted was unconstitutional?*

*No.* All the strictures which defendant levels against the statute, Penal Code, section 484, have been answered contrary to his contentions in *People* v. *Robinson,* 107 Cal.App. 211, 217 et seq. [290 P. 470] (hearing denied by the Supreme Court). The constitutionality of the section is now beyond question. (See *People* v. *Ilderton,* 14. Cal.App.2d 647, 649 [58 P.2d 986] (hearing denied by the Supreme Court).)

There is likewise no merit in defendant's contention that the information was defective because it did not allege an element of intent. Section 952, Penal Code, reads thus: "[Manner of charging commission of offense: Charging theft.] In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another"

In construing section 952 it has been held that an information charging grand theft in that at a certain time and place defendant unlawfully took property having a stated value is sufficient without charging that the property was taken feloniously and with intent to steal. (*People* v. *Plum,* 97 Cal.App. 253, 255 [1] [275 P. 518]. See, also, *People* v. *Torp,* 40 Cal.App.2d 187, 191 [104 P.2d 542].)

The foregoing rule is here applicable.

Second: *Was the evidence sufficient to support a judgment of guilty of grand theft since defendant came into possession of the automobile originally with the consent of the owner?*

*Yes.* The crime of grand theft is complete when a man takes property not his own with the intent to take it, and a defendant may be convicted of grand theft upon proof of facts establishing (a) embezzlement, (b) larceny or (c) obtaining property under false pretenses. (*People* v. *Frazier,* 88 Cal.App.2d 99, 102 [198 P.2d 325].)

■ It is likewise established that where criminal acts may constitute one of two or three forms of theft, depending upon how the jury views the evidence, and the facts so warrant, the verdict of conviction can be sustained on either theory. (*People* v. *Von Badenthal*, 8 Cal.App.2d 404, 408 [48 P.2d 82] ; *People* v. *Chamberlain*, 96 Cal.App.2d 178, 182 et seq. [214 P.2d 600].)

In the present case the facts were sufficient to support the jury's implied finding that defendant was guilty of embezzlement. Section 503 of the Penal Code provides: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted."

■ In the present case defendant received possession of the property lawfully but thereafter violated his trust and fraudulently converted the property to his own use. He was therefore guilty of embezzlement. (*People* v. *Cannon*, 77 Cal.App.2d 678, 689 [176 P.2d 409].)

■ The evidence also warrants the implied finding of the jury that defendant was guilty of larceny by trick and device, since the jury could have inferred from the evidence that defendant's intent to appropriate the vehicle for his own use existed prior to the time he was given possession of it. (*People* v. *Raschke*, 73 Cal. 378, 381 et seq. [15 P. 13] ; *People* v. *Tomlinson*, 102 Cal. 19, 23 [36 P. 506].)

In the instant case the evidence discloses that defendant stated to Mrs. Greenlin, "Let me take your car and this man will fix it for you. I know him very well." After assuring her that he would take the car to Sears for a new battery and that it would take between an hour and an hour and a half, defendant proceeded to drive from Long Beach to Holtville before being apprehended.

■ Since the evidence is sufficient to support either a theory of embezzlement or larceny by trick and device, the trial court did not err in refusing to advise the jury to acquit defendant pursuant to the provisions of Penal Code, section 1118.[2]

Third: *Was defendant deprived of the benefit of the doctrine of reasonable doubt and the presumption of innocence?*

*No.* ■ None of the instructions given or refused is a part of the record herein. Therefore an appellate court

---

[2]Section 1118, Penal Code, reads: "If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury are not bound by the advice."

will assume that correct instructions were given to the jury. (*People* v. *Frye,* 117 Cal.App.2d 101, 108 [10] [255 P.2d 105] ; *People* v. *Brickman,* 119 Cal.App.2d 253, 264 [9] [259 P.2d 917].)

No appeal lies from an order overruling a demurrer. (*People* v. *Miller,* 95 Cal.App.2d 631, 634 [2] [213 P.2d 534].) Therefore the purported appeal from the order overruling defendant's demurrer is dismissed.

The judgment and order denying the motion for a new trial are and each is affirmed.

Moore, P. J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1954.