[Crim. No. 3723.   First Dist., Div. One.   May 9, 1960.]

THE PEOPLE, Respondent, v. HERMAN LUCAS, Appellant.

Bruce A. Bailey, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John S. McInerny, Deputy Attorneys General, for Respondent.

BRAY, P. J.—Defendant appeals from a judgment of the court, sitting without a jury, finding him guilty of violation of section 11500, Health and Safety Code (possession of heroin).

### QUESTIONS PRESENTED

1. Was the search of defendant's person unlawful?
2. Sufficiency of evidence as to defendant's knowledge of the narcotic nature of the substance.

RECORD

Officers Dennis Murphy and Kenneth Murphy were patrolling the streets of San Francisco in an unmarked police car at approximately 11 p. m. They observed defendant and one Lyte standing outside the front steps of a hotel located at 221 6th Street. As defendant and Lyte observed the officers' car coming down the street, they turned and started rapidly to go up into the doorway. The officers made a U-turn and called to the men, who were going up the stairs to the hotel, to stop. The latter kept going. The officers then went into the hotel, identified themselves as police officers and asked if they could talk to the two. At this time defendant and Lyte were about three-quarters of the way up the first flight of stairs in the building. The officers asked the men to step outside the hotel. There defendant was asked his name and if he had any identification. He said his name was Lucas; that he had no identification; that he lived at the hotel, gave the room number and that he had lived there three-four weeks. Upon being asked to go to the room, he then stated that he wasn't staying there. He said, according to the officers, that he was unemployed and had been for ''six, four, three, two weeks, various statements.'' When asked where he had shaved defendant although appearing clean shaven stated that he had not shaved in three days. ''He stated that he was not living nowhere.'' When asked where he stayed the previous night ''he stated he did not stay no place, that he was walking around the streets.'' He was then asked what he had in his shirt pocket, which bulged. He said cigarettes which he had just found. Officer Dennis Murphy testified ''we continued talking about his employment and his residence, and he could give neither question any sensible answer.'' When asked who the other person was, he said he knew him as Cleo, but did not know his other name. He was then placed under arrest for vagrancy and handcuffed. After the arrest a ''fast frisk'' was conducted for weapons. Defendant was asked what other than cigarettes he had in his pockets. He stated, ''Nothing. Look for yourself.'' The cigarettes were taken out of his shirt pocket. In the cigarette package there were three small packages wrapped in binder paper. Each package or bindle contained heroin. Lyte resided at the hotel.

Defendant testified that he first saw the officers in the hallway of the hotel. He told them that he did not live there,

but had three days before; that he was staying with a friend whose name he declined to give; that he had shaved at a girl friend's, whose name he also refused to give. They then made him face the wall with his hands up and searched him. The officers used no threatening words but did tell him not to drop his hands. Defendant did not tell the officers to "Go ahead and look." They took defendant to four different hotels to see if he lived there. Defendant picked up the cigarette package containing the heroin on the sidewalk in front of the hotel while talking to Cleo. He did not know there was heroin in the package. Lyte's testimony was of little if any help to either side. He couldn't remember the conversation, in fact any conversation six or eight weeks old "because my mind don't be thinking about it." However, he did hear defendant tell the officers "Go ahead and search me" and "look and see." He definitely remembered that.

1. *Was the Search Unlawful? No.*

■■■ The two police officers and Lyte testified that defendant consented to the search. ■■ "Whether in a particular case consent is voluntarily given or is in submission to an express or implied assertion of authority is a question of fact to be determined in the light of all the circumstances. [Citations.] ■■ It cannot be said as a matter of law that consent given by a defendant is involuntary because it is given while he is under arrest." *People* v. *Fischer* (1957), 49 Cal.2d 442, 448 [317 P.2d 967]. ■■ "[I]t is the province of the trial court to determine the fact as to whether or not consent was given." *People* v. *Fields,* 167 Cal.App.2d 773, 776 [334 P.2d 1001]. The trial judge so found.

Applicable here is the following statement from *People* v. *White,* 159 Cal.App.2d 586, 592 [324 P.2d 296] : "[D]efendant ignores the clear evidence in the record showing a free and voluntary consent on the part of the defendant to search his room; and the well-known rule that it is not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when the search is made with defendant's consent."

■■ While the supported finding that defendant consented to the search made the finding on the reasonableness of the arrest unnecessary, the court did find the arrest to be reasonable. This finding is likewise supported. ■■ "There is nothing unreasonable in an officer's questioning persons

outdoors at night.'' *People* v. *Blodgett* (1956), 46 Cal.2d 114, 117 [293 P.2d 57].

The furtive actions of defendant and Lyte on seeing the officers, the untruthful and unsatisfactory answers given by defendant to proper questions by the officers, his refusal to answer some of them (see *People* v. *Simon* (1955), 45 Cal. 2d 645, 650 [290 P.2d 531], ''in some circumstances even a refusal to answer would, in the light of other evidence, justify an arrest''), the fact that it appeared that defendant seemed to have no means of support or place to live, constituted reasonable cause for the officers to ''entertain an honest, strong suspicion, that the person in question is guilty of a crime'' (*People* v. *West* (1956), 144 Cal.App.2d 214, 219 [300 P.2d 729]), in this case, vagrancy, as he was on the street at a late hour without any apparent lawful business or apparent means of support. (Penal Code, § 647, subds. 3, 6.)

There was no evidence that the vagrancy arrest was used as a subterfuge to try and secure evidence of other crimes as in *People* v. *Wilson* (1956), 145 Cal.App.2d 1, 5 [301 P.2d 974], or *People* v. *Harris* (1956), 146 Cal.App.2d 142 [304 P.2d 178], and the search after the arrest was not made unlawful by the discovery and seizure of evidence of a crime different from the one upon which defendant was arrested. See *People* v. *Aguirre* (1958), 158 Cal.App.2d 304, 308 [322 P.2d 478] and cases there cited. Thus, both because of the consent of defendant to the search and the propriety of the arrest, the narcotics found in the search were admissible in evidence. We see no reason for commenting on the latter finding and the evidence upon which it was based.

2. *Knowledge of Narcotic Nature.*

Concededly, to constitute a violation of section 11500, Health and Safety Code, defendant must have had knowledge of the narcotic nature of the substance found in his pocket. (*People* v. *Gorg* (1955), 45 Cal.2d 776, 780 [291 P.2d 469].)

Knowledge may be proved circumstantially. (*People* v. *Magdaleno* (1958), 158 Cal.App.2d 48, 51 [322 P.2d 89].)

''To show such knowing possession the conduct of the parties, admissions or contradictory statements and explanations are frequently sufficient.'' (*People* v. *Foster*, 115 Cal. App.2d 866, 868 [253 P.2d 50]; *People* v. *Rodriguez* (1957), 151 Cal.App.2d 598, 601 [312 P.2d 272].) The circumstances hereinbefore related and the reasonable inferences

to be drawn therefrom amply support the court's finding that defendant knew the narcotic nature of the substance in the cigarette package.

Judgment affirmed.

Tobriner, J., and Duniway, J., concurred.