UNITED STATES of America, Plaintiff,

v.

Richard Wade WATSON, Defendant.

No. 29091.

United States District Court S. D. California,

Central Division.

Dec. 19, 1960.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, Asst. U. S. Atty., Chief, Criminal Division, Russell R. Hermann, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Harry D. Steward, San Diego, Cal., for defendant.

WESTOVER, District Judge.

By Grand Jury Indictment it was charged that defendant Richard Wade Watson, "with intent to defraud the United States, knowingly received, concealed and facilitated the transportation and concealment of 56 grams, 600 milligrams of marihuana, which said marihuana, as the defendant then and there well knew, theretofore had been imported and brought into the United States contrary to law."

Defendant duly moved to suppress evidence, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., which motion was denied. At the trial defendant made a second motion to suppress evidence, which was denied. At the end of the Government's case defendant moved for acquittal upon the ground that the evidence in question had been

obtained by illegal search and seizure, which motion was denied.

At the close of all of the evidence in the case, defendant again moved for judgment of acquittal on the ground the evidence had been obtained by illegal search and seizure; whereupon, under Subdivision (b) of Rule 29 of the Federal Rules of Criminal Procedure, the Court reserved decision on the motion and submitted the case to the jury. The jury returned a verdict of guilty. The Court now has before it the motion for judgment of acquittal made by defendant at the close of all of the evidence.

The question before the Court for determination is whether the marihuana introduced into evidence was obtained by illegal search and seizure.

When the case was given to the jury for its verdict, the Court requested of the jury the following special findings of fact:

1. Did the defendant, Richard Wade Watson, deliver voluntarily Exhibit No. 1 [the marihuana] to Officer Love?
The jury found the delivery was voluntary.

2. Was any search of the apartment or furnishings commenced prior to the arrest of the defendant, Richard Wade Watson?

The jury found that no search of the apartment or furnishings commenced prior to defendant's arrest.

The evidence adduced at the time of trial disclosed that officers of the Federal Bureau of Narcotics and deputies of the Sheriff's Office of the County of Los Angeles, California, had one, Donald Clair, under surveillance. Donald Clair was an alleged narcotics violator. The officers had observed Clair on several occasions during the day of August 14, 1960 and could have arrested him on any one of several occasions. However, they did not elect to place him under arrest until late in the afternoon or early evening of that day. Upon reaching the decision to make the arrest, the officers began an attempt to locate him. They did not know at that moment his exact whereabouts so looked for him at various places he was known to frequent.

The officers thought Clair might be found at the apartment of defendant Watson; so some six or seven officers went to the Watson apartment. The Watson apartment was on the second floor of the apartment building, adjacent to another apartment, the doors of the respective apartments being some two or three feet apart. Beside each entrance door was a large window. The officers surrounded the building, one officer being stationed at the rear thereof so that in the event Clair was located and tried to escape through the rear he could be apprehended. The other five or six officers went up the stairs, and Theodore Heisig, an enforcement agent of the Bureau of Narcotics, knocked upon the door of the Watson apartment.

Testimony was to the effect that there were several persons in the apartment and the officers heard conversation. The officers testified that a face appeared at the window, which was identified as the face of Clair.[1] Whereupon, Agent Heisig knocked upon the door again and stated: "Clair, you are under arrest. Open the door." When the door was not opened in response to the order, Agent Heisig put his shoulder to the door, broke the lock, and the officers gained admission into the apartment.

There was testimony that as the officers entered the apartment they saw Clair in a bedroom, going out a rear window. However, as Clair went out through the window, he encountered the agent posted at the rear of the building, was forced

1. Defendant Watson testified that he heard a knock at the door, went to the window adjacent thereto and looked out; that he saw several men in front of the door; that they were not in uniform, and there were no badges or insignia of office in evidence. The defendant testified he thought the men at the door were visiting the adjoining apartment and, as he did not recognize any of them, he believed they had knocked at the wrong door.

back into the apartment and placed under arrest by the officers.

Deputy Sheriff Marvin Love testified that as he entered the apartment he saw the defendant Watson in the kitchen of the apartment and immediately went over to him. He asked Watson if there were any narcotics in the apartment. He further testified that defendant admitted narcotics were there and that a search of the apartment would disclose them; that defendant then voluntarily reached into a cupboard under the kitchen sink and removed therefrom a can containing marihuana which he voluntarily delivered to Officer Love.

Deputy Love also asked defendant Watson if the substance so delivered was marihuana and, upon obtaining an affirmative reply, asked Watson if the marihuana belonged to him. When Watson stated that the marihuana did belong to him, Deputy Love immediately placed him under arrest.

During the course of trial the Court was of the opinion the testimony of Agent Heisig indicated the officers had broken into the apartment illegally—without a search warrant or a warrant of arrest. It was the Court's impression the motion to suppress should be granted, unless the marihuana was voluntarily delivered to the officers by defendant prior to search. The Court inquired of counsel representing the parties whether or not the illegality of the entry tainted the evidence (even though voluntarily delivered to the officers) to the extent that it should be suppressed. Inasmuch as the forced entry seemed to the Court to be illegal, it appeared only logical to ascertain from the jury whether there had been any search of the apartment prior to the arrest of Watson and if the marihuana in question had been voluntarily delivered to the officers.

As the jury has found there was no search of the apartment prior to the arrest of Watson and that the marihuana had been voluntarily delivered by defendant to Deputy Love, the question before the Court for determination is whether the illegal entry so tainted the evidence that it could not be used at the trial.

According to the testimony of Agent Heisig, the officers could have arrested Clair at various times during the day of August 14, 1960. Agent Heisig further testified that when the officers first knocked on the door they did not know Clair was in the apartment. Of course, Watson was not the person being sought by the officers, and there was no intention to arrest Watson at the time his apartment was forcibly entered.

The question of illegal entry has been before the Supreme Court of the United States many times. In the case of Johnson v. United States, 333 U.S. 10, at page 14, 68 S.Ct. 367, at page 369, 92 L.Ed. 436, Mr. Justice Jackson, writing for the Court, states:

" * * * The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

 *   *   *   *   *   *

"The Government contends, however, that this search without warrant must be held valid because incident to an arrest * * * Since it was without warrant, it could be valid only if for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty."

In the case at bar, at the time of the unlawful entry into the Watson apartment there was no knowledge possessed by any of the officers concerning defendant Watson. At the time of the entry there was no "felony of which he [an officer] had reasonable cause to believe defendant [Watson] guilty." The officers did not go to the apartment because they suspected Watson of any crime. They went to the apartment to apprehend Clair.

In McDonald v. United States, 335 U.S. 451, at page 453, 69 S.Ct. 191, at page 192, 93 L.Ed. 153, Mr. Justice Douglas stated in the opinion:

> "The Fourth Amendment to the Constitution provides: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' This guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike. It marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation. And the law provides as a sanction against the flouting of this constitutional safeguard the suppression of evidence secured as a result of the violation, when it is tendered in a federal court. Weeks v. United States, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652]."

In the McDonald case, supra, the officers had been following McDonald and keeping him under surveillance for two months prior to the arrest. At the time of the arrest the officers were not responding to an emergency, and the Supreme Court points out that where they were not so responding to emergency there must be a compelling reason to justify the absence of a search warrant. The Court goes on to say, at page 455 of 335 U.S., at page 193 of 69 S.Ct.:

> " * * * The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not . to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. * * *"

In his concurring opinion in the case, Mr. Justice Jackson had this to say, at page 457, of 335 U.S., at page 194 of 69 S.Ct.:

> "The police for several weeks had this defendant, McDonald, under surveillance. * * *
>
> "However, the officer in charge of the investigation took the matter into his own hands. He neither had nor sought a search warrant or warrant of arrest; he did not then have knowledge of a crime sufficient, even in his own opinion, to justify arrest, and he did not even know that the suspect, McDonald, was in the rooming house at the time. Nevertheless, he forced open the window of the landlady's bedroom and climbed in. He apparently was in plain clothes but showed his badge to the frightened woman, brushed her aside and then unlocked [the] doors and admitted two other officers. * * *
>
> * * * * * *
>
> " * * * Having forced an entry without either a search warrant or an arrest warrant to justify it, the felonious character of their entry, it seems to me, followed every step of their journey inside the house and tainted its fruits with illegality."

The Eighth Circuit has had opportunity to pass upon this question, and it is interesting to note that in the Eighth Circuit case—Hobson v. United States, 226 F.2d 890, 891 (decided in 1955)—the Government agent involved is the same Theodore Heisig who is the main witness in the case at bar.

In the Hobson case, supra, Agent Heisig testified that the defendant's wife,

Regina, had been under surveillance by the Federal Bureau of Narcotics for a number of years and that he knew she participated in an illegal sale of narcotics on March 22, 1955 but no action was taken until April 20, 1955 by him. On April 20, 1955 he and two police officers went to the residence of Regina for the stated purpose of arresting her for the March 22 offense. Agent Heisig was also looking for Gee, another suspect, who he thought might be at Regina's home. The officers had no warrant of arrest or search warrant. No plausible reason was given why a proper warrant had not been obtained.

The defendant, Regina, and Regina's parents resided in Kansas City, Missouri, at 2314 Monroe Street, in a home owned by Regina's mother. One of the officers went to the back of the house and took a position inside the fence enclosing the back yard. He was there, according to Agent Heisig's testimony, "to apprehend anyone who might try to get out, to recover any evidence that might be thrown from the rear of the premises, and generally an observation post."

Heisig and the other officer went to the front door and knocked. Defendant appeared at the door but retreated without opening it. Shortly thereafter Regina appeared at the door clad only in a slip. The officers identified themselves and demanded admittance. Regina asked for time to get into some clothes. About that time the officer at the rear shouted, " 'He threw some "stuff" out of the window.' " The officers at the front door then made a forced entrance into the house by breaking the glass in the outer door and forcing open the inner door. The defendant threw a package from a back window into the enclosed back yard. He claimed he did this immediately after the break-in. The officers contended the break-in followed the throwing and the shouted information that the "stuff" had been thrown. Agent Heisig admitted that when they broke in he had no information as to the contents of the package.

In analyzing the case, the Eighth Circuit states, at page 892 (through Judge Van Oosterhout, citing Brock v. United States, 5 Cir., 223 F.2d 681) as follows:

" '* * *, the right to protection against unreasonable search or seizures and compulsory self-incrimination belongs to the guilty as well as the innocent. [Citations.] Unless courts are prepared to enforce these rights and protect those charged with crime, irrespective of their obvious guilt, they condone illegitimate and unconstitutional practices which, if long adhered to, may result in a breakdown of the protection accorded free men by the Fourth and Fifth Amendments * * *.'

"The Government places its chief reliance upon its contention that the heroin was obtained by voluntary disclosure of the defendant and not as the result of search and seizure. The evidence discloses that while the officers were seeking to gain admission and either immediately before or just after the break-in the defendant threw the heroin out of the window into the enclosed back yard. As to this the trial court says:

" 'Well, I am afraid that when the defendant did that, whatever constitutional rights he had, he threw out the window with them, because that was a voluntary disclosure on his part of the possession of contraband, and officers of the law, like others, do not need to shut their eyes and look the other way when they see an offense being committed, * * *' "

Judge Van Oosterhout continues, at page 894 of 226 F.2d:

" * * *, we can not separate the throwing of the package from the unlawful search. The defendant's action in throwing the package was not voluntary but was forced by the actions of the officers. That the officers anticipated such a result is evidenced by the fact that they stationed a man in the back yard to receive any person or evidence that might come out. The throwing of the package was directly caused by

the actions of the officers. Further, even after the package was thrown out it remained upon protected premises. Without its seizure and examination it afforded no incriminating evidence."

The trial court was reversed and the case remanded.

A Judge of this court has had occasion to rule upon the question before us. Judge Byrne, in United States v. Fowler, 17 F.R.D. 499, at page 501, stated:

" * * * True, the obtaining of the warrant may on occasion be waived by the individual; he may give his consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. * * *

* * * * * *

"The real problem is whether the unlawful search of the defendant's apartment and the seizure of the key to the garage so tainted what was found in the garage that it should be suppressed as fruit of the poisonous tree. * * * "

This Court is of the opinion now, as it was at the time of trial, that there was no legal excuse for the breaking and entering into defendant's apartment. The apartment was surrounded by Sheriff's Deputies and Narcotics Agents. It could have been kept under observation until a search warrant was obtained; but instead of following legal procedure, the officers took matters into their own hands. No valid reason appears in the record for the failure of the officers to seek and obtain a search warrant.

■■ In the McDonald case, supra, Mr. Justice Jackson clearly indicates that illegal entry voids every step of the officers' journey into the house and taints the fruits thereof with illegality. Consequently, this Court must hold that even though there was no search of the apartment prior to the arrest of Watson, and even though the marihuana offered in evidence was given voluntarily to the officers, the evidence is tainted to such extent by the illegality of the entry that it cannot be used in a Federal court.

As a result, on the motion for judgment of acquittal this Court reluctantly must release a defendant who stands convicted of the offense charged in the Indictment.