[Crim. No. 7170.   Second Dist., Div. Three.   Feb. 27, 1961.]

THE PEOPLE, Respondent, v. BERNICE RAYFORD, Appellant.

Russell E. Parsons and Harry E. Weiss for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David R. Cadwell, Deputy Attorney General, for Respondent.

FORD, J.—The appellant was accused of two violations of section 11500 of the Health and Safety Code. In the first count of the information the offense alleged was possession of marihuana, while in the second count the charge was possession of amidone. Her right to trial by jury was waived. It was stipulated that the matter be submitted to the trial court upon the transcript of the testimony given at the preliminary examination and upon the exhibit there received in evidence. Having been found guilty as charged, the appellant has appealed from the judgment of conviction.[1] The sole contention presented is that the conviction cannot stand because the evidence essential thereto was obtained by means of an unlawful search and seizure.

Aside from the testimony of a police chemist who expressed his opinion as to the narcotic nature of the objects found on the appellant's premises, the only witness was M. E. Buckner,

---

[1] In the notice of appeal it is stated that the appeal is "from the judgment and sentence." But the judgment in a criminal case is the sentence; "sentence" is another term for "judgment" under such circumstances. (*People* v. *Carlson*, 177 Cal.App.2d 201, 207 [2 Cal.Rptr. 117]; *People* v. *Perkins*, 147 Cal.App.2d 793, 797-798 [305 P.2d 932]; *People* v. *Tokich*, 128 Cal.App.2d 515, 519 [275 P.2d 816].)

a police officer for the city of Los Angeles. The appellant did not testify in her own behalf.

Officer Buckner testified that at approximately 8:50 p. m. on the night of the arrest of the appellant he and Officer Lavan went to a rear window of her house and listened for about five or ten minutes to a conversation which was taking place inside the house. Then the telephone rang and he heard someone say, "They are." Thereafter someone ran to the rear portion of the house and the back porch light was turned on. Some person said, "The heat is outside," and ran into another part of the house. There was a sound as of the opening of a medicine chest and "a rattle that sounded like bottles." Shortly thereafter the officer heard a toilet flush twice. The officer went to the rear door. He knocked. The appellant came to the door. The witness told her that he was a police officer and that he wanted to talk to her about narcotics. She told him to come into the front room and that she did not want her friends to hear what was happening. After the officer went into the front room, he asked the appellant how much "stuff" she had flushed down the toilet. She answered, "Oh, a little less than a half ounce." He told her that she was dealing in narcotics and that he wanted to know where the rest of the "stuff" was. After the conversation had lasted about 15 minutes, she told him that she had been selling narcotics, but only on a small scale, and was making about 10 dollars a day at the most. She then took him to the garage where she said there was some marihuana "stashed." After she unlocked the garage door, she pointed to a box, but when it was found to be empty she said, "Mado must have come Sunday and taken this marihuana away. It probably went to San Francisco."

The officer and the appellant then returned into the house and talked further for about 15 minutes. He accused her of having some narcotics "stashed" on the property. She then inquired as to what would happen to her if narcotics were found and he replied that he would not discuss that with her until she disclosed where the narcotics were. She then said that she would show him the location of the narcotics. The officer went with her into a small utility room adjacent to the kitchen. She said that the "stuff" was in the attic above the room. Upon climbing into the attic, he found a large manila bag containing a brick of green leafy material (which the chemist identified as marihuana). In a smaller manila bag he found two contraceptives and in another bag a blue balloon,

each containing a white powdery substance (which the chemist identified as amidone). He also found 19 white-paper cigarettes (which, in the opinion of the chemist, contained marihuana).

On cross-examination, Officer Buckner testified that he had no warrant for the arrest of the appellant and no search warrant. When he listened at the window, he was in the appellant's driveway.

The objects so obtained were received in evidence at the preliminary examination over the objection that they had been obtained as the result of an illegal search and seizure.

■ Upon this appeal, the evidence and the inferences reasonably to be deduced therefrom must be viewed in the light most favorable to the People. (*People* v. *Melody,* 164 Cal.App.2d 728, 734 [331 P.2d 72] ; *People* v. *Flummerfelt,* 153 Cal.App.2d 104, 105-106 [313 P.2d 912].) In view of the act of the appellant in consenting to the entry of Officer Buckner into her house, together with her voluntary disclosure of the presence of narcotics in the attic and her implied consent to the search thereof, we need not be concerned with the question of the propriety of the officers' prior entry onto the driveway of her property and their eavesdropping under her window. ■ The applicable law is stated in *People* v. *Michael,* 45 Cal.2d 751, at page 753 [290 P.2d 852] : "To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person (*United States* v. *Di Re,* 332 U.S. 581, 594 [68 S.Ct. 222, 92 L.Ed. 210] ; *Amos* v. *United States,* 255 U.S. 313, 317 [4 S.Ct. 266, 65 L.Ed. 654]), but if he freely consents to an entry or search, or voluntarily produces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable. (*Zap* v. *United States,* 328 U.S. 624, 628 [66 S.Ct. 1277, 90 L.Ed. 1477] ; *Davis* v. *United States,* 328 U.S. 582, 593-594 [66 S.Ct. 1256, 90 L.Ed. 1453] ; *In re Dixon,* 41 Cal.2d 756, 761 [264 P.2d 513].) ■ Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." (See also *People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469] ; *People* v. *Davis,* 48 Cal.2d 241, 249 [309 P.2d 1] ; *People* v. *Fischer,* 49 Cal.2d 442, 448 [317 P.2d 967].) ■ As stated in *People* v. *Galle,* 153 Cal.App.2d 88, at page 90 [314 P.2d

58] : ''While there is reason for the view that a request or a demand by an officer for permission to search premises is to some extent coercive, considered alone, it does not render the consent involuntary as having been obtained by coercion.'' The appellant's contention on this appeal is without merit. No error appears in the record.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.