[Crim. No. 7312.   In Bank.   May 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT L. HAVEN, Defendant and Appellant.

Russell Bruno, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny, John F. Foran and Albert W. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

TRAYNOR, J.—A jury found defendant guilty of possession of marijuana in violation of Health and Safety Code, section 11530. He admitted a prior conviction of violating Health and Safety Code, section 11500, and the trial court sentenced him to prison for the term prescribed by law. He appeals, contending that the marijuana introduced in evidence against him was obtained by an illegal search and seizure.*

Inspector Kerrigan of the Narcotics Detail of the San Francisco Police Department testified that he received information that defendant had narcotics at a house on Army Street. On September 25, 1961, he and several other narcotics officers placed the house under surveillance for from 10 to 12 hours. They observed about eight persons, including defendant, enter and leave. Four or five were known to the officers as having been engaged in narcotics traffic or being suspected thereof. Defendant testified that the officers entered and searched the premises on September 25, but found no narcotics and made no arrests. Neither of the officers who testified mentioned a search on that date.

A week later, on October 2, Inspector Kerrigan returned to the house in the afternoon with Inspector Arieta of the San Francisco police, two state narcotics officers, and one federal narcotics officer. They had no warrant. Inspector Kerrigan testified that he went to the front door with one of the state officers. He knocked and rang the bell but received no answer. The door was open about 2 inches, and he could see defendant and his wife through a hallway in the kitchen at the back of the house. Defendant was sitting at a table and

---

*The trial court admitted the evidence over objection after a hearing outside the presence of the jury. ''The procedure adopted by the trial court was proper, for the admissibility of the evidence presented a question of law for the court.'' (*People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469].)

his wife was cooking. Inspector Kerrigan pushed the door open, displayed his badge, and said, "Police Officer. I would like to talk to you." He entered the house and defendant said, " 'What do you want?' I asked him who he was. He said, 'Robert Haven.' I said, 'I would like to talk to you.' He said, 'What about?' I said, 'I am a narcotic officer.' " They went into the living room, and Inspector Arieta and the state and federal officers then entered the house.

Inspector Arieta questioned defendant about narcotics. He testified that defendant told him there were no narcotics in the house and that he would not keep them there because of the children and because it was his mother-in-law's house. He admitted that he had an outfit for taking narcotics and produced it from under a mattress. The officer examined defendant's arm and saw puncture marks. He searched him and found a key in his pocket with no identifying marks. Defendant told him that he thought it was a key to his mother's house. The officer asked defendant's wife about the key, and she replied that defendant had a room in a hotel on Mission Street. Defendant denied any knowledge of a hotel room.

The officers took defendant and his wife in separate cars to the hotel on Mission Street. Defendant and two officers approached the hotel door, defendant walked past it, and one of the officers called him back. He walked up the stairs with the officers to room 205, one of the officers opened the door with the key, and they all entered. The officers found marijuana in the pocket of a coat in the closet. Inspector Kerrigan testified that defendant admitted that the coat and marijuana were his.

Inspector Arieta testified that defendant consented to the search of his person and to going with the officers to the hotel. Defendant testified that he did not consent to the search of his person, that Inspector Arieta ordered him to come with the officers to the hotel, and that "I didn't argue with him." He also testified that the coat and marijuana were not his and denied that he had told the officers that they were.

Defendant contends that the officers' entry into the Army Street house was unlawful and that therefore the ensuing searches of his person and of the hotel room were also unlawful whether or not he consented thereto. In any event, he contends that there is no evidence that he consented to the search of the hotel room. The Attorney General contends that the officers had probable cause to enter the Army Street

house to arrest defendant, that the search of the hotel room was justified as incidental to defendant's arrest, and that even if it was not, the marijuana was lawfully obtained pursuant to defendant's consent.

■ Defendant made a prima facie case that the search and seizure were illegal when he established that they were made without a warrant. The burden then rested on the prosecution to show proper justification. (*Tompkins* v. *Superior Court, ante,* pp. 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113] ; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].)

■ The prosecution did not establish that the officers had probable cause to arrest defendant when they entered the Army Street house on October 2. Their testimony was barren of the details of the information they had received a week or more before, and it was therefore impossible for the trial court to determine whether that information would justify a reasonable belief of defendant's guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469].) Nor did their surveillance a week before the arrest provide reasonable cause. Although eight persons were seen to enter and leave the house in a 10 to 12-hour period, six persons lived there including three minor children and defendant's wife and mother-in-law. The four or five who were known to have been engaged in or who were suspected of being engaged in the narcotics traffic presumably included defendant and his wife, both of whom had previous narcotics records. For all that appears, the others who were observed were suspected merely because they came to the house. Moreover, no explanation was given for the delay of a week between surveillance and arrest. If, as defendant testified without contradiction, the officers searched the premises on September 25 and found no narcotics, the information upon which they acted may have been proved false before they returned on October 2.

■ The prosecution also failed to establish consent to the officers' entry into the house on the day of the arrest. ■ The right to seek interviews with suspects or witnesses at their homes does not include the right to walk in uninvited merely because there is no response to a knock or a ring. (*People* v. *Michael,* 45 Cal.2d 751, 753-754 [290 P.2d 852].) ■ In the present case it clearly appears that Inspector Kerrigan entered the house before defendant or his wife had any opportunity to object, and it seems most prob-

able that he was in the house before they were even aware of his presence. There is no evidence whatever that they consented to his entry or the entry of the four other officers a few minutes later.

■ Since the officers' presence in the house was unlawful, they could not rely on defendant's consent to search. Since he was suddenly confronted by five officers who had entered without right or permission, it was equivocal at best whether his apparent consent to being searched was voluntary. The substantial probability that the unlawful entry was essential to securing consent and the inescapable uncertainty whether the consent was voluntary preclude treating the consent as an independent valid basis for the ensuing search of defendant's person. Accordingly, the consent, the search, the finding of the key, and the resulting discovery of the marijuana in the hotel room were all products of the officers' unlawful entry and cannot be relied upon to sustain the judgment. (*Wong Sun* v. *United States,* 371 U.S. 471 [83 S.Ct. 407, 416-417, 9 L.Ed.2d 441]; *Work* v. *United States,* 243 F.2d 660, 662; *Takahashi* v. *United States,* 143 F.2d 118, 122; *United States* v. *Watson,* 189 F.Supp. 776, 781; *People* v. *Wilson,* 145 Cal.App.2d 1, 7 [301 P.2d 974]; cf. *People* v. *Burch,* 196 Cal.App.2d 754, 767 [17 Cal.Rptr. 102]; see also Jackson, J., concurring in *McDonald* v. *United States,* 335 U.S. 451, 459 [69 S.Ct. 191, 93 L.Ed. 153, 158]; *Britt* v. *Superior Court,* 58 Cal.2d 469, 473 [24 Cal.Rptr. 849, 374 P.2d 817]; *People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 273 [294 P.2d 23].)

■ It is true that there is language in several cases to the effect that a search or seizure made pursuant to consent is valid even though the consent was given immediately after an unlawful entry or arrest. (*People* v. *Rayford,* 189 Cal. App.2d 474, 477 [11 Cal.Rptr. 427]; *People* v. *Zavaleta,* 182 Cal.App.2d 422, 429 [6 Cal.Rptr. 166]; *People* v. *Lucas,* 180 Cal.App.2d 723, 726-727 [4 Cal.Rptr. 798]; *People* v. *King,* 175 Cal.App.2d 386, 389 [346 P.2d 235]; *People* v. *Rodriguez,* 168 Cal.App.2d 452, 457 [336 P.2d 266]; *People* v. *Hicks,* 165 Cal.App.2d 548, 550-551 [331 P.2d 1003]; *People* v. *Melody,* 164 Cal.App.2d 728, 734 [331 P.2d 72].) In most of these cases, however, the language was not necessary to the decision. It appears to reflect a mechanical extension of the rule that probable cause to arrest or a warrant is not required to justify a search when consent to the search is given before

the officer enters and searches or makes an arrest. (See *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241].) A search or seizure made pursuant to a valid consent before any illegal police conduct occurs is obviously not a product of illegal conduct. A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom. Accordingly, language in the cited cases to the contrary is disapproved.

▮▮ Even if we were to hold that defendant's consent justified the officers' investigation at the Army Street house and that the evidence there uncovered constituted reasonable cause to believe that defendant was guilty of possession of narcotics, the search of the hotel room would nevertheless be unlawful. If, as defendant contends, he was arrested at the Army Street house, a search of the hotel room at a distance therefrom could not be justified as incidental to the arrest. (*Castaneda* v. *Superior Court, ante*, pp. 439, 442 [30 Cal. Rptr. 1, 380 P.2d 641]; *Tompkins* v. *Superior Court, ante*, pp. 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *People* v. *Gorg*, 45 Cal.2d 776, 781 [291 P.2d 469].) If, as the officers testified, defendant was not arrested until the marijuana was found in the hotel room, the search could still not be justified as incidental to his arrest. It could not be justified by what it turned up. (*People* v. *Brown*, 45 Cal.2d 640, 643-645 [290 P.2d 528]; *Tompkins* v. *Superior Court, ante*, pp. 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113].) Moreover, even if the officers had probable cause to arrest before discovering the marijuana, they were not entitled to delay making a formal arrest until they had taken defendant from the house to the hotel to justify a search of the hotel room as incidental to an arrest there. "An arrest may not be used as a pretext to search for evidence." (*United States* v. *Lefkowitz*, 285 U.S. 452, 467 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775]; *People* v. *Roberts*, 47 Cal.2d 374, 378 [303 P.2d 721]; *People* v. *Schaumloffel*, 53 Cal.2d 96, 101 [346 P.2d 393].) ▮▮ "It is settled law that 'when it appears, as it does here, that the search and not the arrest was the real object of the officers in entering upon the premises, and that the arrest was a pretext for or at the most an incident of the search,' the search is not reasonable within the meaning of the Constitution. *Henderson* v. *United States* (4th Cir.) 12 F.2d 528, 531 [51 A.L.R.

720

420]." (*McKnight* v. *United States*, 183 F.2d 977, 978.)
■ In the present case, the officers did not take defendant to the hotel and enter the hotel room to arrest him but to conduct a search. The arrest was at most an incident of the search, and it may not be used as a pretext to justify it.

■ Accordingly, even if we were to assume, contrary to our holding herein, that the finding of the key and the resulting discovery of the marijuana in the hotel room were not the product of the unlawful entry into the Army Street house, the search of the hotel room without a warrant could be justified only by a valid consent.

Defendant's consent to the search at the Army Street house, however, was not only vitiated by the unlawful entry, but it did not even purport to authorize the officers to search the hotel room. Defendant did not give the officers permission to search the hotel room or to use his key to gain entrance thereto, and by attempting to divert them from it, he made it clear that he did not wish the room searched. In this respect this case is controlled by *Castaneda* v. *Superior Court, ante,* pp. 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641], where we stated: "We do not condone petitioner's efforts to mislead the officers. It bears emphasis, however, that petitioner was under no duty to assist the officers in securing evidence against him. Since the search was not incident to his arrest, he had the right to have a magistrate determine whether there was reasonable cause to search his home and whether a search warrant should therefore issue. (*Chapman* v. *United States,* 365 U.S. 610, 613-616 [81 S.Ct. 776, 5 L.Ed.2d 828, 831-833]; *Johnson* v. *United States,* 333 U.S. 10, 13-15 [68 S.Ct. 367, 92 L.Ed. 436, 439-440]; *Agnello* v. *United States,* 269 U.S. 20, 32-33 [46 S.Ct. 4, 70 L.Ed. 145, 148-149, 51 A.L.R. 409, 413-414].) ' "Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals." ' (*People* v. *Tarantino,* 45 Cal.2d 590, 594 [290 P.2d 505], quoting *McDonald* v. *United States,* 335 U.S. 451, 455 [69 S.Ct. 191, 93 L.Ed. 153, 158].) Petitioner did not forfeit that right by his efforts to mislead the officers."

The burden was on the prosecution to prove a valid consent to the search. It failed to discharge that burden.

The judgment is reversed.

Gibson, C. J., Peters, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent.

The record in the instant case fails to disclose that defendant requested any instructions to the jury, and there has not been prepared and presented to this court a copy of any oral instructions given by the trial judge to the jury.

Where the instructions given or refused do not constitute part of the record, an appellate court will assume that correct instructions were given to the jury. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Corenevsky,* 124 Cal.App.2d 19, 24 [10] [267 P.2d 1048]; *People* v. *Jackson,* 88 Cal.App.2d 747, 750 [3] [199 P.2d 322]; 4 Cal.Jur.2d (1952) Appeal and Error, § 589, p. 466; cf. *In re Patterson,* 58 Cal.2d 848, 853 [7] [27 Cal.Rptr. 10, 377 P.2d 74].)

Accordingly, in addition to the evidence set forth by Mr. Justice Agee in the opinion prepared by him for the District Court of Appeal *(People* v. *Haven* (Cal.App.) 26 Cal. Rptr. 650), it must be assumed that the trial court fully and fairly instructed the jury on all material issues presented to it and that such instructions followed the law. It must also be presumed that the jury,—in light of all the evidence adduced at the trial, as limited by the court's instructions,— determined the ultimate questions of fact defined by the instructions as to whether defendant voluntarily accompanied the police officers to his hotel room and voluntarily permitted them to search it.

It must further be assumed that the jury fairly and impartially weighed the evidence pursuant to the presumptively comprehensive and valid instructions and found substantial support for the material findings of fact upon which the ultimate admissibility of the evidence and all issues upon which the judgment of guilty was predicated. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Tarantino,* 45 Cal.2d 590, 597 [7] [290 P.2d 505]; *People* v. *Sutic,* 41 Cal.2d 483, 494 [9] [261 P.2d 241].)

I would therefore affirm the judgment.

Schauer, J., concurred.