[Crim. No. 58.   Fifth Dist.   June 24, 1963.]

THE   PEOPLE,   Plaintiff   and   Respondent,   v.   FRANK
MUNOZ ZABALA, Defendant and Appellant.

Russell B. Henry, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant was convicted of the crime of possession of marijuana (Health & Saf. Code, § 11530) and was sentenced to imprisonment in state's prison. He does not claim that the evidence, if properly admitted, is insufficient to warrant the verdict; his contentions on appeal are that he was illegally arrested, that marijuana found in his clothing as a result of the illegal arrest should not have been received in evidence, that a motion made for a mistrial should have been granted, and that he was improperly denied the name of an informer.

On May 24, 1962, State Narcotic Agent Robert Mannen and Captain John Davidian, of the Dinuba Police Department, went to Surabian's Packing House in the City of Dinuba, where the defendant was employed. They had received notification from an unnamed informer, that the defendant, who had been in trouble previously, had also recently had possession of narcotics. The officers had obtained two search warrants, one of which had been used to search a former residence of the defendant in Selma, without disclosing any incriminating evidence; the other warrant was directed to a

search of the defendant's room at Dinuba, but that warrant was never used. Neither warrant was offered, or received, in evidence.

In the packing house, the officers approached the foreman of the plant, a Mr. Debusky, and asked him for permission to talk with the defendant. At that time Zabala was at work approximately 35 to 40 feet away. Mr. Debusky walked over to where the appellant was standing and told him of the request; the defendant looked in the direction of Agent Mannen and Captain Davidian, who was in uniform, and immediately turned and started walking away. He soon began to walk faster, and while he did not run, he was moving rapidly in a direction away from the officers. He thrust both of his hands into his pockets; Captain Davidian ran after him and saw him take his left hand out of his pocket and make a swinging motion with his left arm as if throwing something aside. Captain Davidian did not then stop, but continued in pursuit of the appellant. A fellow workman of defendant witnessed the incident and later recovered from a stack of empty lug boxes a matchbox containing three marijuana cigarette butts; the officers then also found two complete marijuana cigarettes in the same stack of lug boxes.

While Captain Davidian pursued Mr. Zabala by one route, Officer Mannen, dodging through the busy packing shed, took a slightly different course and finally caught up with the defendant, who was then walking casually and not at the rapid pace which he had adopted before throwing the marijuana cigarette butts away. At that time the state narcotic agent arrested the defendant, although he had not seen him throw anything toward the lug boxes and was unaware that he had had possession of the marijuana cigarettes.

The officers took Mr. Zabala to the Dinuba Police Department and then to his place of residence, and with the consent of the owner of the premises, proceeded to make a search of the room, but found nothing incriminating there. The search warrant which the officers had in their possession at the time was not served or used. The defendant gave authority to the officers to procure a change of clothing for him, but there was no affirmative showing by the prosecution that he consented to a search of the clothing which he had worn at the time of his arrest and no proof that he agreed that the officers might retain such clothes or their contents as evidence. Traces of marijuana were discovered in the debris in two pockets of his trousers and in his shirt pocket, and evi-

dence of this fact was introduced at the trial over the objections of defendant's counsel.

As already noted, the officers had received information from a source which they testified they considered reliable that at least pointed the finger of suspicion at the defendant; what the informer told them is not in evidence. The officers were familiar with his past record. Agent Mannen was fully aware that the appellant had previously been engaged in violations of the law relating to narcotics, he having been arrested and prosecuted for possession of heroin in 1960; in 1962 Agent Mannen had arrested appellant, and at that time marijuana seeds were found in his automobile.

■ The arrest having been made without a warrant, the burden rested on the People to show proper justification. (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2 23].) ■ Here, the respondent sought to justify the arrest on the following grounds: (1) the officers knew of the former record and reputation of Zabala; (2) they had received information concerning defendant's recent illegal activities from an informer they believed to be reliable; (3) the defendant acted furtively and suspiciously by walking away from them at an increasingly rapid pace.

■ That the state narcotic agent could properly take into account the past conduct, character and reputation of the appellant is clear from the authorities. As is said in *People* v. *Wickliff,* 144 Cal.App.2d 207, 212-213 [300 P.2d 749]:

"In determining whether there is reasonable cause to believe a person guilty of a felony, a peace officer may take into account the past conduct, character and reputation of the person suspected, and reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535], and cases therein cited). There is no formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances."

(See also *People* v. *Amado,* 167 Cal.App.2d 345 [334 P.2d 254]; *People* v. *Gorg,* 157 Cal.App.2d 515, 520 [321 P.2d 143]; *People* v. *Hollins,* 173 Cal.App.2d 88, 92-93 [343 P.2d 174].)

But a mere bad record, standing alone, does not justify an

554

arrest (*People* v. *Sanders,* 46 Cal.2d 247, 250-251 [294 P.2d 10]) ; if it did, rehabilitation of an exconvict would be seriously, often fatally, interfered with.

▆▆ The officers did not disclose in their testimony what the informer had told them. As is said in *People* v. *Haven, supra,* 59 Cal.2d 713, 717 :

"Their testimony was barren of the details of the information they had received a week or more before, and it was therefore impossible for the trial court to determine whether that information would justify a reasonable belief of defendant's guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469]."

▆▆ And if the information given by the informer had been placed in the record, it would then have become the imperative duty of the prosecution to disclose the name of the informer upon demand of the defendant. (*Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39] ; *People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19].)

"Disclosure is required where the informer participated in the crime with which the defendant is charged; where he took no part in the crime but was an eyewitness; where the informer's communication was the only justification for the action of the police and the informer did nothing more than give the police information leading to an arrest made without a warrant and alleged to have been unlawful; where, in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial. On the other hand, where the arrest is valid apart from the information received from the informer, the latter's identity need not be revealed. (*Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39] ; *People* v. *Williams,* 51 Cal.2d 355, 358-359 [333 P.2d 19].) In other words, it is not necessary to reveal the identity of an informer who merely points the finger of suspicion at a defendant and an arrest follows which is based on reasonable cause other than the information received from the informer. (*People* v. *Amado,* 167 Cal.App.2d 345, 347-348 [344 P.2d 254] ; *People* v. *Smith,* 166 Cal.App.2d 302, 306-307 [333 P.2d 208].)" (*People* v. *McMurray,* 171 Cal.App.2d 178, 183 [340 P.2d 335].)

▆ The mere fact that the defendant rapidly walked away from the place where he had been working in the packing plant would not authorize his arrest. (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531].) ▆ We believe

that there was no reasonable and probable cause for making the arrest and that it therefore was illegal.

    ■ The subsequent search of the defendant's clothing ". . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (*People* v. *Haven, supra,* 59 Cal.2d 713, 719.) The arrest and search could not be justified by what the search turned up. (*People* v. *Brown,* 45 Cal.2d 640, 643, 644 [290 P.2d 528].) The marijuana debris secured from the defendant's trousers and shirt and testimony concerning it should have been excluded. While there is other evidence persuasively pointing to the guilt of the defendant, we can not assume on this appeal that the jury would have brought in a verdict of guilty if the improperly received evidence had been excluded, and the judgment must be reversed.

    ■ When State Narcotic Agent Mannen was on the stand, the following questions were asked and answers given by him:

"Q. Now on that particular afternoon, do you recall where you were? A. Yes, sir, I was in the City of Dinuba.

"Q. And what was the nature of your duty at that particular time? A. *I was investigating a person under suspicion of possession of narcotics.*

"Q. *Who was that person?* A. *The defendant Zabala.*" (Italics added.)

Counsel for defendant objected and moved for a mistrial; the defendant's motion was denied, but the court instructed the jury to disregard the last two questions and answers. His counsel argues that this was an attempt by the prosecution to impeach the defendant as a theoretical witness, and he points out that the defendant, exercising his constitutional right so to do, did not take the stand and therefore could not be impeached; he further contends that even if the defendant had taken the stand this would be an improper method of impeachment not authorized by section 2051 of the Code of Civil Procedure. However, it should be obvious that this was not an attempt to impeach a witness but was an effort to justify the later arrest; whether admissible for that purpose or not, the court did order that portion of the record stricken and directed the jury to disregard it. It is to be assumed that the jury obeyed the instruction of the court, and therefore, even if the evidence was erroneously received, no prejudice resulted. (*People* v. *Reddick,* 176 Cal.App.2d 806, 819

[1 Cal.Rptr. 767] ; *People* v. *Carner,* 144 Cal.App.2d 687, 692 [301 P.2d 623].)

The judgment is reversed.

Brown (R.M.), J., and Stone, J., concurred.

A petition for a rehearing was denied July 22, 1963, and respondent's petition for a hearing by the Supreme Court was denied August 20, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.